## Case No. 6,069.

### HARLEY et al. v. GAWLEY et al.

[2 Sawy. 7.][1]

District Court, D. California. April 17, 1871.

MISCONDUCT FORFEITS RIGHT TO SALVAGE.

Where, by the law of the state [Laws Cal. 1850–53, p. 134] it was provided that any person who shall take away any goods from any stranded vessel, or any goods cast by the sea upon the land, or found in any bay or creek, * * * and shall not within four days deliver them to the sheriff, etc., etc., shall be guilty of a misdemeanor, etc., etc.; and the libellant having recovered an anchor and chain which had been lost in the Bay of San Francisco, and

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

failed to deliver them to the sheriff, or to libel the same for salvage; but sold the anchor and appropriated its proceeds, and the anchor was subsequently surrendered by the purchaser to the owner, who also recovered the chain from the salvor; and the latter filed his libel in personam to recover a salvage compensation; *held,* that he had by his misconduct forfeited all right to a salvage compensation.

[Cited in U. S. v. Stone, 8 Fed. 251.]

[This was a libel for salvage by Charles Harley and others against William Gawley and others.]

McAllisters & Bergin, for libellants.
Milton Andros, for respondents.

HOFFMAN, District Judge. This was a libel for salvage. It appears that the master of the bark Tidal Wave, having lost his anchor in the bay, employed the libellant to search for and recover it; for which service, if successful, he was to receive $140.

An expedition was accordingly fitted out at considerable expense, and, after some three weeks' search, the anchor and chain were recovered. They were found, however, as the libellant states, a mile and a half from the place where he had been informed they had been lost, and the anchor was so covered with long grass as to make him suppose it had been in the water a much longer time than the five or six weeks which had elapsed since the loss of the Tidal Wave's anchor. The chain was taken to the junk-shop of the libellant, and the anchor was left in an open space at the corner of Market and California streets, where it lay for two months; when it, together with the chain and all the other anchors and chains in the libellant's possession, was sold. Before, however, the purchaser had taken possession of the anchor, it had been removed by the respondent, who claimed it to be his.

The libellant testifies that he did not know to whom the anchor belonged. He subsequently acquiesced in the respondent's claim of property, and restored to him the chain, which had been delivered to the purchaser. He now brings this suit to recover salvage compensation.

This claim is resisted on the ground that the salvors have lost all right to their reward, by converting the property to their own use, and by omitting to proceed against it in court and submit their claims to its adjudication, and by omitting to deliver it to the sheriff, as required by section 25 of the act of the legislature of this state, approved April 10, 1850. That section is as follows: "Every person who shall take away any goods from any stranded vessel, or any goods cast by the sea upon the land, or found in any bay or creek; or shall knowingly have in his possession any goods so taken or found, and shall not deliver the same to the sheriff of the county, where the same shall have been found, within four days after the same shall have been taken by him, or have come into his posses-

sion, shall forfeit treble the value of the goods so taken or found, and shall be deemed guilty of a misdemeanour punshable by fine and imprisonment, etc.

It is contended on the part of the libellant that this section only applies to "wrecks of the sea" strictly so called, i. e., property cast upon the shore, and not to goods found on the bottom of a bay or river, wholly submerged in the water.

To this point Baker v. Hoag, 3 Seld. [7 N. Y.] 555, is cited. In that case a lien was claimed under the state statute "of wrecks," on certain wool found in a canal boat which had been sunk and abandoned in the Hudson river. It was held that the statute referred exclusively to property known at common law as wrecks, i. e., to such goods as are after a shipwreck cast by the sea upon the land, and left there within some county, for they are not "wrecks" so long as they remain at sea within the jurisdiction of the admiralty. But the plaintiff's lien was sustained as a valid lien for salvage under the maritime law. The California statute is nearly identical with that of New York. The first section renounces any right of property, similar to that possessed in England by the crown, to ships, vessels, boats, goods, wares, and merchandise "cast by the sea upon the land." The subsequent sections speak merely of "wrecked property."

But it is by no means clear that the term "wrecked property" should be taken to refer exclusively to what was known as wrecks at the common law. Anciently, all property cast after shipwreck by the sea upon the land was considered wreck, and adjudged to belong to the king. But, by the statute of Westminster (3 Edw. I. c. 4), the rigor of the common law was relaxed, and it was enacted that, if a man, dog, or other animal escape alive out the ship, it shall not be wreck. But even this absurd and unjust limitation upon the owner's right to recover his property was repudiated by Lord Mansfield, who declared that the whole inquiry was a question of ownership: that the coming ashore alive of a dog or a cat was not better proof of ownership than if they had come ashore dead; and that, if no owner could be discovered, the goods belonged to the king, and not otherwise. Hamilton v. Davis, 5 Burrows, 2732. By the laws of the states of this country, the ancient rights of the crown to waifs, estrays, lost money, goods, wrecks, etc., have been generally renounced. In some of the states, the proceeds, if unreclaimed for a year, are divided between the finder and the poor of the town. In some, the expenses only of the finder are deducted; while in others, as New York and California, the proceeds of shipwrecked goods, after allowing a reasonable salvage are paid into the public treasury.

It seems, therefore, most reasonable to construe the California statute as renouncing, by its first section, any sovereign rights of the

people of the state to property, which, as technically wreck, might have been supposed to belong to them, as against the true owner; but in the subsequent sections, as intending to provide for the custody, preservation, and restitution to the owner, in case he appeared, or the final distribution of its proceeds, if unclaimed, of all property which, in consequence of any marine disaster, might have been lost or abandoned. And this, whether it was a wreck in the technical sense of the term, or was flotsam, jetsam, or ligan; or an anchor abandoned by a vessel in a tempest, with no buoy attached, which at common law would be neither "wreck," "flotsam," or "ligan," and perhaps not "jetsam," though contributed for like jettisoned goods in general average.

But any doubt as to the construction of the statute is dispelled by the 25th section. That section provides, as we have seen, "that every person who shall take away any goods from any stranded vessel" (it may be on a rock or reef unconnected with the shore), "or any goods cast by the sea upon the land, or found in any bay or creek, and shall not deliver them within four days to the sheriff, shall be deemed guilty of a misdemeanor," etc., etc.

The anchors in this case were found in this bay, and if, as the libellant asserts, he did not know to whom they belonged, it was his duty under the statute to deliver them to the sheriff to be disposed of according to law, or at least to proceed against them in this court and submit his claim for salvage to its adjudication. He had no right whatever to dispose of them at private sale without notice to any one, and with the evident intention of appropriating their entire proceeds.

The jurisdiction of this court over the case either as a suit in rem against the goods salved, or in personam against the owner who has received his property, is not disputed. The Hope, 3 C. Rob. Adm. 215; The Trelawney, Id. 216, note. But the court is asked to apply to this case the rigorous, but wholesome rules of the admiralty which deny to salvors, no matter how meritorious, all compensation when guilty of misconduct or bad faith.

The most usual case for the application of this rule is when an embezzlement has occurred; but any misconduct, such as false representations made for the purpose of exaggerating the danger or hardship of the service, and to enhance the reward—spoliation, smuggling, an obtrusion of unnecessary services, a refusal to accept necessary or needful assistance, will be punished by a total, or partial, forfeiture of compensation. Lewis v. Elizabeth & Jane [Case No. 8,321]; [The Bello Corrunes] 6 Wheat. [19 U. S.] 152; The Boston [Case No. 1,673]. And see cases cited in Fland. Mar. Law, pp. 346, 347, and Jones, Salv. p. 124 et seq.

In the case at bar, I see not how the libellant can be acquitted of flagrant misconduct. He has committed a violation of the law of the state, which exposes him to punishment

as for a misdemeanor. He has attempted to appropriate property which he knew not to be his, and it was only when it was accidentally discovered and reclaimed by the owner that he has sought the aid of this court to obtain a compensation.

A due respect for the laws of the state within which this court sits, as well as for the principles of justice and policy on which those and similar laws throughout the United States are founded, forbid the court to look with any indulgence upon so flagrant a violation of their salutary provisions. And if it be true, as suggested at the hearing, that the practice of appropriating in violation of the law, and in entire disregard of the owner's rights, anchors, chains, and other property found derelict in this harbor, is extensively pursued, an additional reason is furnished why persons so engaged should be admonished of their own duties, and taught to respect the rights of others. The libel must be dismissed.